IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STACY MELICHAR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLUE CROSS AND BLUE SHIELD ) <br> OF KANSAS, INC., and THE ) <br> HEALTH BENEFIT PLAN FOR ) <br> MEMBERS OF THE KANSAS ) <br> BANKERS ASSOCIATION, ) <br> ) <br> Defendants. ) <br> ) | 4:17CV3147 <br><br> **MEMORANDUM** <br> **AND ORDER** |

Plaintiff seeks more than $88,000 from Defendants, who allegedly denied payment for medical services provided to Plaintiff under a health insurance policy issued through Plaintiff's employer. (Filing No. 11, Amended Complaint.) Defendants seek dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. Alternatively, Defendants ask the Court to transfer this case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. (Filing No. 12.)

### I. FACTUAL BACKGROUND

On August 17, 2017, Plaintiff filed her Complaint, and Defendants timely removed the case to this court under 28 U.S.C. § 1446(b). (Filing No. 1, Notice of Removal.)  In its Notice of Removal, Defendants established that Plaintiff's Complaint was based on an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. *See* 29 U.S.C. §§ 1002(1), 1003(a). (Filing No. 1, Notice of Removal ¶¶ 6-8.)

Plaintiff alleges that she is a resident of Lincoln, Nebraska, and that she was enrolled in a Health Benefit Plan ("Plan") through her employer, Community First National Bank ("Bank"), which is a Kansas bank and a member of the Kansas Bankers Association ("Association"). (Filing No. 11, Amended Complaint ¶ 2; Filing No. 14-1, Stones Decl. ¶ 6.[1])

Plaintiff alleges she required certain health care services and treatment beginning in December 2015, and such services were provided in Lancaster and Saunders County, Nebraska. (Filing No. 11, Amended Complaint ¶ 3.) Plaintiff contends Defendants paid for some of these medical treatments, but then later demanded that certain health care providers refund certain payments. Plaintiff further asserts that Defendants denied payment entirely to two other Lincoln, Nebraska, health care providers that treated Plaintiff. Plaintiff claims that Defendants' denial of payment "breach[ed] their contract of insurance" with Plaintiff, and Defendants are estopped from disputing their liability for the payments because they "did previously authorize the treatments and previously made payments to the plaintiff's healthcare providers, and knew or should have known that the plaintiff would rely to her detriment upon the actions of the defendants in making said payments." (Filing No. 11, Amended Complaint ¶¶ 7-8.)

The Plan is an ERISA plan established by the Association for the exclusive purpose of providing certain welfare benefits to employees of Association-member employers, all of which are Kansas banks and trust companies and the Association itself. (Filing No. 14-1, Stones Decl. ¶ 4, Ex. A.) Defendant Blue Cross Blue Shield of Kansas ("BCBSKS") and the Association entered into an Administrative Services

---

[1]In considering a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue, the court is permitted to consider evidence outside the pleadings. *Weimer v. Gen. Motors LLC*, No. 4:16-CV-02023, 2017 WL 3458370, at *4 (E.D. Mo. Aug. 11, 2017); *Cooper v. Dep't of Army*, No. 4:13CV3086, 2013 WL 6631618, at *1 n.1 (D. Neb. Dec. 17, 2013); *Catipovic v. Turley*, No. C 11-3074, 2012 WL 2089552, at *16 (N.D. Iowa June 8, 2012) (collecting cases).

Agreement under which the Association delegated authority to BCBSKS to administer claims made by enrollees under the Plan. (Filing No. 14-3, Graves Decl. ¶ 4, Ex. A; Filing No. 14-1, Stones Decl. ¶ 8.)

BCBSKS is a Kansas corporation with its principal place of business in Topeka, Kansas. (Filing No. 14-3, Graves Decl. ¶ 3.) BCBSKS administered claims filed under the Plan from its headquarters in Topeka, Kansas. Accordingly, any benefit claims at issue in this lawsuit were reviewed and administered by BCBSKS in Kansas. (Filing No. 14-3, Graves Decl. ¶ 5.) Kansas is the sole situs of the Plan's administration, all of the Plan's assets are located in Kansas, and all decisions concerning the Plan's administration are made in Kansas. Moreover, all material records and witnesses related to the Plan, its policies and procedures, and the Plan's administration are located in Kansas. (Filing No. 14-1, Stones Decl. ¶ 5; Filing No. 14-3, Graves Decl. ¶¶ 5, 7.)

Plaintiff claims that BCBSKS used BCBS Network Blue in Omaha, Nebraska, in initially paying, and then denying payment for, medical services provided to Plaintiff at Bryan Medical Center in Lincoln, Nebraska. (Filing No. 16, Pl.'s Br. Opp'n Defs.' Mtn. Dsm. at CM/ECF p. 2.)[2]

---

[2]Plaintiff has filed an Evidence Index (Filing No. 17) purporting to contain invoices from Bryan Medical Center sent to BCBS Network Blue in Omaha, Nebraska, and Explanations of Benefits from Blue Cross Nebraska. However, these documents have not been properly authenticated because counsel has not "produce[d] evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), as counsel does not have personal knowledge that these documents are true, accurate, and complete copies of the documents as maintained by Bryan Medical Center and BCBS Network Blue. Further, the documents are not self-authenticating under Fed. R. Evid. 902, and there has been no showing that the documents would be admissible against a hearsay objection as a regularly conducted activity pursuant to Fed. R. Evid. 803(6) or medical records pursuant to Fed. R. Evid. 803(4). However, because Defendants do not dispute Plaintiff's allegation that BCBS Network Blue in Omaha, Nebraska, processed Plaintiff's initial medical claims, I shall

## II. MOTION TO DISMISS FOR IMPROPER VENUE

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(3) bears the burden of demonstrating that the plaintiff's choice of venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947); *Luebbert v. Employers & Operating Engineers Local 520 Pension Fund*, No. 4:06CV01140, 2007 WL 1100455, at *2 (E.D. Mo. Apr. 10, 2007) (considering 12(b)(3) motion in ERISA case). Venue for an ERISA action is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2) (Westlaw 2018).

### A. Where Plan is Administered

As noted above, one of the three ways to establish proper venue in an ERISA case is by filing the action where the plan is "administered." Here, neither party disputes that the relevant Plan is administered in Kansas because Defendants have established that the Plan is managed in Kansas, and Plaintiff has not shown to the contrary. (Filing No. 14-1, Stones Decl. ¶ 5.) All claims made under the Plan are reviewed and administered by BCBSKS in Kansas, and the day-to-day management of the Plan is conducted in Kansas. (Filing No. 14-1, Stones Decl. ¶¶ 5, 8; Filing No. 14-3, Graves Decl. ¶¶ 4-5.) All of Plaintiff's claims and requests for benefits, including those that were denied and which are at issue in this lawsuit, were reviewed and analyzed by BCBSKS's employees and representatives in Kansas. (Filing No. 14-3, Graves Decl. ¶ 5.) Because it is undisputed that the Plan is administered in Kansas, venue in this court is not proper under the "plan-administration" portion of 29 U.S.C. § 1132(e)(2).

---

accept the allegation as true for purposes of the motion under consideration.

## B. Where Breach Took Place

Venue in an ERISA action also is proper where the alleged breach occurred. This, according to Plaintiff, is "[t]he issue" in this case. (Filing No. 16, at CM/ECF p. 3.) The parties do not cite, nor has the court found, an Eighth Circuit Court of Appeals opinion that addresses the issue of where the alleged breach occurs in an ERISA action, and there is a split of authority on this issue among district courts. Some district courts hold that the breach occurs where the benefit payment was to be received[3], and other courts hold that the breach takes place where the decision was

---

[3] *French v. Dade Behring Life Ins. Plan*, 906 F. Supp. 2d 571, 578 (M.D. La. 2012) (breach took place for ERISA venue purposes where plaintiff received underpayment of benefits); *Barnum v. Mosca*, 2009 WL 982579 (N.D.N.Y. 2009) (the "place of breach" for an ERISA claim is where plaintiff was to receive benefits, not location where decision to withhold benefits was made); *Roshinsky v. Reynolds*, 2008 WL 2827528, *10 (W.D.N.Y. 2008) (vast majority of district courts find venue proper "where the beneficiary was supposed to receive his benefits, i.e., his residence"); *Luebbert*, 2007 WL 1100455, at *3 ("Although the Eighth Circuit has yet to address this issue, most courts have determined that the alleged breach occurred in the district where the beneficiary receives, or should have received, the benefits."); *Stickland v. Trion Group, Inc.*, 463 F. Supp. 2d 921, 925 (E.D. Wis. 2006) (holding that breach of duty to pay benefits occurs "where the benefits and/or notice are to be received, which will generally be where the participant or beneficiary resides"; noting that holding was consistent with Congress's intent that ERISA venue provisions be construed in favor of plan participants and beneficiaries and that holding otherwise would make § 1132(e)(2) provision authorizing venue "where the plan is administered" superfluous); *Coulter v. Office and Professional Employees Intern. Union*, 2003 WL 21938910, *3 (E.D. Tenn. 2003) ("[W]here a plaintiff claims that failure to pay a benefit breaches the terms of an ERISA plan, the alleged breach is deemed, for purposes of venue under § 1132(e)(2), to have occurred in the place where the plaintiff receives his or her benefits."); *Schrader v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 232 F. Supp. 2d 560, 573 (M.D.N.C. 2002) (the alleged breach in ERISA cases "is considered to have occurred in the district where the beneficiary receives his benefits"); *Cole v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002) (for purposes of ERISA venue provision, place of breach is where payment was to be received, noting that contrary

5

made to deny benefit payments.[4] Still other courts hold that the nature of the ERISA

---

conclusion would make first two venue options in § 1132(e)(2)—district where the plan is administered and where breach took place—"coextensive"; because Congress's intent in passing ERISA was to "remove jurisdictional procedural obstacles," ERISA venue provision "should be interpreted so as to give beneficiaries a wide choice of venue"); *Cole v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 227 F. Supp. 2d 190, 195 & n.6 (D. Mass. 2001) (in ERISA case where "essential nature" of claim was denial of benefits for medical services, court sided with majority of courts holding that in ERISA benefit-claim cases, breach occurs where performance was due—that is, where plaintiff was to receive benefits); *Stumpf v. Medical Benefits Adm'rs*, 2001 WL 1397326 (D. Neb. 2001) (in ERISA case alleging breach of fiduciary duties by denying payment of benefits, venue was proper in district where plaintiff "was denied payment of her medical expenses"); *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890 (E.D. Pa. 1997) (in case where plaintiff sued for benefits due under ERISA plan, court would follow rules of contract law, look to plaintiff's choice of venue, and consider ERISA policy favoring free access to federal courts to hold that breach took place where plaintiff was to receive benefits; "Time after time, courts have found that a breach that results from plaintiffs being denied benefits occurs where the benefits are to be received by the original pension holder."); *Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 832 (E.D. Tex. 1987) (when ERISA claim was for failure to pay benefits, breach "took place" for purposes of ERISA venue provision at "the place where the recipient of benefit[s] under the contract actually acquires his due," namely "the place where pension benefits are received"); *Bostic v. Ohio River Co. (Ohio Division) Basic Pension Plan*, 517 F. Supp. 627, 635 (S.D. W. Va. 1981) (breach for failure to pay pension benefits under ERISA is place where benefits were to be received, which was plaintiff's residence; noting that question of "in which district a breach of duties imposed by ERISA itself occurs" was not at issue).

[4] *Aucoin v. Prudential Ins. Co. of Am.*, 959 F. Supp. 2d 185, 191 (D.D.C. 2013) (ERISA claim for denial of benefits arose where claims administrator denied plaintiff's disability claim); *Seitz v. Bd. of Trustees*, 953 F. Supp. 100, 102 (S.D.N.Y.1997) (for purposes of ERISA venue provision, breach "took place" where pension-benefit claims were processed); *Orgeron v. Moran Towing Corp.*, 1994 WL 462995 (E.D. La. Aug. 22, 1994) (venue for purposes of ERISA is where decision to deny benefits was made); *Turner v. CF&I Steel Corp.*, 510 F. Supp. 537 (E.D. Pa. 1981) (breach of ERISA plan for purposes of § 1132(e)(2) "took place" in district where decisions regarding payment amounts were made and in district from which

claim is dispositive—that is, "[i]f the claim is for breach of contract, the breach occurs where the plaintiff was to receive the benefits due them under the contract. On the other hand, if the claim is for breach of a fiduciary duty, the breach occurs where the defendants acted or failed to act in accordance with their duties." *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 2008 WL 410088, at *8 (D. Or. 2008).[5]

---

benefit payments were sent); *Boyer v. J.A. Majors Co.*, 481 F. Supp. 454, 459 (N.D. Ga. 1979) (for purposes of ERISA venue provision, breach of plan occurred where decision to stop benefit payment was ordered, which was where plan was administered).

[5]*See also Brown v. SunTrust Banks, Inc.*, 66 F. Supp. 3d 81, 84 (D.D.C. 2014) (for purposes of ERISA venue provision, breaches of fiduciary duty occurred where plan was administered); *Tyson v. Pitney Bowes Long-Term Disability Plan*, No. 07-CV-3105, 2007 WL 4365332, at *3 (D.N.J. Dec. 11, 2007) (venue was proper for claim of breach of fiduciary duty where decision to discontinue benefits was made); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (most courts view ERISA benefit plans as contracts and hold that breach of contractual duty to pay benefits occurs in district "where the beneficiary receives, or should have received, his benefits"; in contrast, "when the plaintiff alleges only a breach of fiduciary duty, rather than makes a claim for benefits due, the breach is considered to have occurred where defendants acted or failed to act as their duties required"); *Cole*, 227 F. Supp. 2d at 195 & n.6 (for "breach of fiduciary duty claims," the breach "is viewed as having occurred where the fiduciaries acted in contravention to their duty or failed to act as their duty required," whereas venue for denial-of-benefits claims is where benefit was to be received); *McFarland v. Yegen*, 699 F. Supp. 10, 13 (D.N.H. 1988) (when claim was not failure to pay benefits, but instead that defendant's conduct caused ERISA plan to lose value, breach was where defendants committed or failed to commit actions their duties required, which was where plan was managed). These courts apparently did not consider the idea that a failure to pay benefits might be considered a fiduciary act. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 218-19 (2004) ("A benefit determination under ERISA, though, is generally a fiduciary act. . . . [A] benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan.").

7

Here, Plaintiff's claim is that "[t]he defendants did breach their contract of insurance to the plaintiff" by failing to pay for Plaintiff's medical treatment under the terms of the health-insurance policy issued to Plaintiff through her employer. (Filing No. 11 ¶ 7.) The basis of this claim is that Defendants failed to perform their contractual duty to pay for Plaintiff's medical treatment. This failure of performance occurred when Plaintiff or her health-care providers—all located in Nebraska—did not receive such payment. *See Northwest Arkansas Masonry, Inc. v. Summit Specialty Prod., Inc.*, 31 P.3d 982, 985 (Kan. Ct. App. 2001) ("A breach of contract occurs when there is a failure of performance of a duty arising or imposed by agreement."); *Andersen v. A.M.W., Inc.*, 665 N.W.2d 1, 5 (Neb. 2003) (breach of contract occurred when defendant failed to make commission payment to plaintiff). Under analogous general principles of contract law, Defendants in this case breached the insurance contract with Plaintiff when Plaintiff failed to receive benefits due in Nebraska.

This conclusion is supported by the structure of the ERISA venue provision, which sets forth three separate venue options: "in the district where the plan is administered, where the breach took place, *or* where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2) (emphasis added). Deciding that the breach takes place where the decision to deny benefits is made would render the first two venue options one and the same.

> The judicial authority is divided on whether the breach took place where the payment was denied or where the payment was to be received. The better view, supported by an analogy to contract law, is that the breach took place where the payment was to be received. Otherwise, if the place of breach were the place where the benefits were denied, the place of breach always would be where the plan is administered, rendering the first two venue options in ERISA coextensive.

14D Charles A. Wright et al., *Federal Practice and Procedure § 3825 (4th ed. Apr. 2017)*. *See also Cole v. Central States Southeast & Southwest Areas Health & Welfare Fund,* 225 F. Supp. 2d 96, 98 (D. Mass. 2002) (same); *Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1002 (D. Minn. 2006) (stating that "case law does not provide a clear answer" regarding where breach takes place for purposes of ERISA venue provision; collecting cases on both sides and rejecting argument that, for purposes of ERISA venue, a breach takes place where decision to deny coverage is made because "it is hard to believe that Congress intended that the ERISA venue provision be skewed so heavily in favor of defendants and so heavily against beneficiaries").

The view that a breach occurs for ERISA venue purposes where the payment was to be received is also supported by the intent behind the ERISA venue provision, which, along with other ERISA administrative and enforcement provisions, were "designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act." H.R. Rep. No. 93-533, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655.

> The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to *remove jurisdictional and procedural obstacles* which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants. For actions in federal courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the court.

*Id.* (emphasis added). In other words, giving ERISA plaintiffs more, not fewer, venue options would be consistent with congressional intent.

Because I conclude that the "breach took place" for purposes of the ERISA venue provision, 29 U.S.C. § 1132(e)(2), where Plaintiff failed to receive the benefit

payments due to her or her Nebraska medical providers, venue is proper in the District of Nebraska and Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) will be denied.[6]

### III. MOTION TO TRANSFER

Having decided that this suit was properly filed in the District of Nebraska under the ERISA venue provision, 29 U.S.C. § 1132(e)(2), I must now consider Defendants' alternative Motion to Transfer this matter to the District of Kansas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. A court may transfer a case to another district where it "might have been brought" if such transfer is more convenient for the parties and witnesses or if the interest of justice weighs in favor of the transfer. 28 U.S.C. § 1404(a). As discussed above, this case "might have been brought" in the District of Kansas, making the only issue whether convenience and fairness warrant the transfer of this particular case.

The Eighth Circuit Court of Appeals has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision, *see Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), but district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether

---

[6]The parties spend much time debating the merits of the only decision in this district addressing the ERISA venue issue, *Stumpf v. Medical Benefits Adm'rs*, 2001 WL 1397326 (D. Neb. 2001) (Bataillon, J.) (in ERISA case alleging breach of fiduciary duties by denying payment of benefits, venue was proper in district where plaintiff "was denied payment of her medical expenses"). While I reach the same result as Judge Bataillon in *Stumpf*, I am not bound by that decision. "'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Camreta v. Greene*, 563 U.S. 692, 709 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], p. 134-26 (3d ed. 2011)).

transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). In deciding whether to transfer a case under section 1404(a), courts typically have taken into account considerations such as the following: (1) the convenience of the parties (accessibility to records and documents, location where conduct occurred, applicability of state's substantive law); (2) the convenience of the witnesses (willingness of witnesses to appear, ability to subpoena witnesses, adequacy of deposition testimony); and (3) the interest of justice (judicial economy, plaintiff's choice of forum, comparative costs to the parties litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, advantages of having a local court determine questions of local law).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc.*, 119 F.3d at 695. Here, Defendants argue that this case should be transferred to Kansas because: (1) this case will be decided on the administrative record, which is located in Kansas; (2) challenges to the accuracy of the administrative record would be addressed by witnesses who live in Kansas; (3) the median length of time from filing to disposition of civil cases in Kansas is .8 of a month shorter than in Nebraska; and (4) the applicable agreements provide that to the extent not preempted by federal law, Kansas law governs. (Filing No. 14-2 at CM/ECF p. 38; Filing No. 14-5 at CM/ECF p. 54.) Plaintiff responds that she resides in Lincoln, Nebraska; that her treating physicians reside in either Lincoln or Wahoo, Nebraska; and that whether witnesses will be allowed to supplement the administrative record "is not before the Court." (Filing No. 16 at CM/ECF p. 8.)

## A. Location of Administrative Record

Defendants first argue that this case will be decided on the administrative record, which is located in Kansas. As an initial matter, it is not clear that this case will indeed be tried on the administrative record alone, as "[a] district court may admit

11

additional evidence in an ERISA benefit-denial case . . . if the plaintiff shows good cause for the district court to do so." *Brown v. Seitz Foods, Inc., Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). Because Plaintiff resides in Lincoln, Nebraska; her treating physicians reside in either Lincoln or Wahoo, Nebraska; and her medical treatment was provided in Nebraska, additional evidence might well come from this judicial district.

Further, "[w]hile access to books and records is a factor to be taken into account when determining if transfer is warranted, modern technology allows easy reproduction and little weight should be given if the records can be easily transported." *Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678, 688 (S.D. Iowa 2006); *Seneca Companies, Inc. v. Becker*, 134 F. Supp. 3d 1148, 1158 (S.D. Iowa 2015) (location of documents did not favor transfer because movant failed to show that relevant documentation could not easily be transported to district court where case was originally filed). Here, Defendants have made no showing that the relevant documents would be too voluminous to transport. Therefore, Defendants have failed to show that this factor warrants a transfer to Kansas.

## B. Location of Witnesses

Defendants have not named any actual potential witnesses located in Kansas, nor have they offered evidence that such witnesses would be unwilling or unable to testify in Nebraska or that their deposition testimony would be insufficient. *See Medicap*, 416 F. Supp. 2d at 688. Additionally, if Plaintiff is allowed to supplement the administrative record, witnesses located in this district might well be called. Because witnesses from both Kansas and Nebraska may be called in this action, and because it is unclear that the quantity, location, and accessibility of witnesses make one judicial district more convenient than the other, this factor favors neither party. *Travel Tags, Inc. v. Performance Printing Corp.*, 636 F. Supp. 2d 833, 838 (D. Minn. 2007).

## C. Judicial Efficiency

Defendants argue that this case should be transferred to Kansas because the median length of time from filing to disposition of civil cases in Kansas is .8 of a month shorter than in Nebraska. Besides the insignificance of this difference, "whether one court would move any given case to trial faster is speculative, because case-disposition statistics may not always tell the whole story. . . . Docket congestion is a permissible factor to consider in deciding a § 1404(a) motion, but it is not by itself, a dispositive factor." *In re Apple,* 602 F.3d at 915 (internal quotation marks and citations omitted). This factor does not work in Defendants' favor.

## D. Governing Law

Finally, Defendants argue that this case should be transferred to Kansas because the agreements at issue provide that Kansas law applies to this dispute to the extent not preempted by federal law. Plaintiff's denial-of-benefits claim is likely to be preempted by ERISA, so only federal law would apply. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 221 (2004) (action brought to remedy only denial of benefits under ERISA-regulated benefit plan was completely preempted by ERISA); *Estes v. Fed. Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005) (state claim that related to ERISA employee benefit plan was preempted by ERISA); *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000) (ERISA preempted claim asserting improper processing of claim for benefits under ERISA plan). In any event, this case does not involve complex or novel questions of law such that this court could not competently and fairly apply Kansas law if necessary. *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (in context of transfer-of-venue analysis, "courts can just as easily apply the law of another state as easily as their own") (internal quotation and citation omitted). Therefore, this factor does not favor transfer.

**E. Other Factors**

Factors weighing heavily in Plaintiff's favor include her choice of forum. "In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." *Terra Int'l, Inc.*, 119 F.3d at 695; *Stickland v. Trion Grp., Inc.*, 463 F. Supp. 2d 921, 928 (E.D. Wis. 2006) (declining defendants' motion to transfer ERISA case because it was not "clearly more convenient to litigate" case elsewhere; giving "considerable weight" to plaintiff's choice of forum and relative wealth of parties). In addition—and as discussed above with regard to the ERISA venue provision—the alleged breach of contract that is the basis for this lawsuit occurred in Nebraska; that is, Defendants failed to pay for medical services provided to a Nebraska resident by Nebraska physicians at Nebraska medical facilities.

After considering the various aspects of convenience and fairness applicable to this particular case, I conclude that Defendants have failed to show that a transfer to Kansas is clearly warranted.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss or In the Alternative Motion to Transfer Case to U.S. District Court for the District of Kansas (Filing No. 12) is denied.

DATED this 13th day of April, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge